UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFF HAWKINS, | No. 2:19-cv-1228 TLN KJN P |
| Plaintiff, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| M. WINKFIELD, et al., | |
| Defendants. | |

Plaintiff, a state prisoner, proceeds pro se and in forma pauperis with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff alleges that defendants Winkfield, Pendleton, Decker, and Whipple used excessive force in violation of the Eighth Amendment. Before the court is defendants' motion for summary judgment. For the reasons set forth below, the undersigned recommends defendants' motion be granted.

BACKGROUND

This case proceeds on plaintiff's unverified amended complaint, filed on September 9, 2019. (ECF No. 10.) Plaintiff alleged that while housed at Mule Creek State Prison ("MCSP"), en route to the law library on August 28, 2018,[1] defendant Pendleton pepper-sprayed plaintiff,

---

[1] As noted by defendants, plaintiff appears to have misstated the date of the incident. Documents appended to his pleading demonstrate that the incident at issue here occurred on September 28, 2018, not August 28, 2018. (ECF No. 10 at 16, 20, 22-23, 29-37.) But the date of the incident is not material to resolution of the instant motion; defendants addressed plaintiff's grievances

1

then defendant Troncoso handcuffed plaintiff behind his back, and defendant Winkfield pulled plaintiff to the C-side of the dayroom where all defendants forced plaintiff to the floor. Defendant Winkfield placed his right knee on plaintiff's arm, while beating plaintiff with clinched fists targeting plaintiff's head. The remaining defendants shackled plaintiff's feet while taking their open shots on plaintiff's body while he was face down on the ground. Plaintiff seeks money damages for the physical injuries he sustained. (ECF No. 10.)

On screening, this court found plaintiff stated cognizable Eighth Amendment claims against defendants Winkfield, Pendleton, Decker, Troncoso, and Whipple. (ECF No. 11.) On August 5, 2020, defendants filed an answer. (ECF No. 27.)

On May 12, 2021, defendants filed the instant motion for summary judgment. (ECF No. 85.) In their motion, defendants argue this action should be dismissed because plaintiff failed to exhaust his administrative remedies prior to filing this suit. Plaintiff filed an opposition on July 9, 2021.[2] (ECF No. 94.) Defendants filed a reply on July 20, 2021. (ECF No. 95.)

Defendant Troncoso, who died during the pendency of this action, was dismissed from this action on August 6, 2021. (ECF No. 96; see also ECF Nos. 91, 76.)

## MOTION FOR SUMMARY JUDGMENT

I. Summary Judgment Standards

Summary judgment is appropriate when it is demonstrated that the standard set forth in Federal Rule of Civil Procedure 56 is met. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

---

submitted from August 28, 2018 through July 2, 2019.

[2] With his three-page opposition, plaintiff provided numerous exhibits, including a complete copy of his deposition transcript, copies of filings by defendants, and various unrelated appeals and medical records. (ECF No. 94 at 4-258.)

2

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting then-numbered Fed. R. Civ. P. 56(c)). "Where the nonmoving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." Nursing Home Pension Fund, Local 144 v. Oracle Corp. (In re Oracle Corp. Sec. Litig.), 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325); see also Fed. R. Civ. P. 56 advisory committee's notes to 2010 amendments (recognizing that "a party who does not have the trial burden of production may rely on a showing that a party who does have the trial burden cannot produce admissible evidence to carry its burden as to the fact"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp., 477 U.S. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at 323.

Consequently, if the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of such a factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987), overruled in part on other grounds, Hollinger v. Titan Capital Corp., 914 F.2d 1564, 1575 (9th Cir. 1990).

////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 630. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving a summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587; Walls v. Central Costa County Transit Authority, 653 F.3d 963, 966 (9th Cir. 2011). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586 (citation omitted).

By contemporaneous notice provided on May 17, 2021 (ECF No. 85-1), plaintiff was advised of the requirements for opposing a motion brought pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (*en banc*); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

II. Legal Standards for Exhaustion of Administrative Remedies

   A. PLRA Exhaustion Requirement

The Prison Litigation Reform Act of 1995 (PLRA) mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a

4

prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Compliance with deadlines and other critical prison grievance rules is required to exhaust.  Woodford v. Ngo, 548 U.S. 81, 90 (2006) (exhaustion of administrative remedies requires "using all steps that the agency holds out, and doing so properly").  "[T]o properly exhaust administrative remedies prisoners 'must complete the administrative review process in accordance with the applicable procedural rules,' -- rules that are defined not by the PLRA, but by the prison grievance process itself."  Jones v. Bock, 549 U.S. 199, 218 (2007) (quoting Woodford, 548 U.S. at 88); see also Marella v. Terhune, 568 F.3d 1024, 1027 (9th Cir. 2009) ("The California prison system's requirements 'define the boundaries of proper exhaustion.'") (quoting Jones, 549 U.S. at 218).

"[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life."  Porter v. Nussle, 534 U.S. 516, 532 (2002).  As stated in the statute, "[t]he PLRA requires that an inmate exhaust only those administrative remedies 'as are available.'"  Sapp v. Kimbrell, 623 F.3d 813, 822 (9th Cir. 2010) (quoting 42 U.S.C. § 1997e(a)) (administrative remedies plainly unavailable if grievance was screened out for improper reasons); see also Nunez v. Duncan, 591 F.3d 1217, 1224 (9th Cir. 2010) ("Remedies that rational inmates cannot be expected to use are not capable of accomplishing their purposes and so are not available.").  "We have recognized that the PLRA therefore does not require exhaustion when circumstances render administrative remedies 'effectively unavailable.'"  Sapp, 623 F.3d at 822 (citing Nunez, 591 F.3d at 1226); accord Brown v. Valoff, 422 F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust 'available' remedies persists as long as some remedy remains 'available.'  Once that is no longer the case, then there are no 'remedies . . . available,' and the prisoner need not further pursue the grievance.").

Dismissal of a prisoner civil rights action for failure to exhaust administrative remedies must generally be brought and decided pursuant to a motion for summary judgment under Rule 56, Federal Rules of Civil Procedure.  Albino v. Baca, 747 F.3d 1162, 1168 (9th Cir. 2014) (en banc).  "Nonexhaustion" is "an affirmative defense" and defendants have the burden of "prov[ing] that there was an available administrative remedy, and that the prisoner did not

exhaust that available remedy." Id. at 1171-72. A remedy is "available" where it is "capable of use; at hand." Williams v. Paramo, 775 F.3d 1182, 1191 (9th Cir. 2015) (quoting Albino, 747 F.3d at 1171). Grievance procedures that do not allow for all types of relief sought are still "available" as long as the procedures may afford "some relief." Booth v. Churner, 532 U.S. 731, 738 (2001). If a defendant meets the initial burden, a plaintiff then must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." Albino, 747 F.3d at 1172.

The Supreme Court identified three situations in which administrative remedies are "unavailable" within the meaning of the statute. First, an "administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end -- with officers unable or consistently unwilling to provide any relief to aggrieved inmates." Ross v. Blake, 136 S. Ct. 1850, 1859 (2016) (citing Booth, 532 U.S. at 736, 738). Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use. In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." Id. at 1859. Third, "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation," the administrative remedy is effectively unavailable. Id. at 1860 (citing Woodford, 548 U.S. at 102). "[T]he ultimate burden of proof remains with the defendant." Albino, 747 F.3d at 1172.

B. California's Inmate Appeal Process[3]

The State of California provides its inmates and parolees the right to administratively appeal ''any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare.'' Cal. Code Regs. tit. 15, § 3084.1(a). California prisoners are required to

---

[3] The regulations cited herein were in effect at all times relevant herein, 2018 to 2019. Subsequently, on March 25, 2020 (effective June 1, 2020), California Code of Regulations, title 15, sections 3084 through 3084.9 were repealed, and replaced and renumbered with amended sections 3480 through 3487.

lodge their administrative complaint on a CDCR-602 form (or a CDCR-602 HC form for a health-care matter), which instructs the inmate to describe the problem and outline the action requested. The grievance process, as defined by California regulations, has three levels of review to address an inmate's claims, subject to certain exceptions. See Cal. Code Regs. tit. 15, § 3084.7. Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. Id. § 3084.1(b).

The amount of detail in an administrative grievance necessary to properly exhaust a claim is determined by the prison's applicable grievance procedures. Jones, 549 U.S. at 218; see also Sapp, 623 F.3d at 824 (''To provide adequate notice, the prisoner need only provide the level of detail required by the prison's regulations''). In California, the level of specificity required in the appeal is described in a regulation:

> The inmate or parolee shall list all staff member(s) involved and shall describe their involvement in the issue. To assist in the identification of staff members, the inmate or parolee shall include the staff member's last name, first initial, title or position, if known, and the dates of the staff member's involvement in the issue under appeal. If the inmate or parolee does not have the requested identifying information about the staff member(s), he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question. [¶] The inmate or parolee shall state all facts known and available to him/her regarding the issue being appealed at the time of submitting the Inmate/Parolee Appeal form, and if needed, the Inmate/Parolee Appeal Form Attachment.

Cal. Code Regs. tit. 15, § 3084.2(a) (3-4). An inmate has thirty calendar days to submit his or her appeal from the occurrence of the event or decision being appealed, or "upon first having knowledge of the action or decision being appealed." Cal. Code Regs. tit. 15, § 3084.8(b).

III.  Undisputed Facts re Exhaustion

Defendants filed a Statement of Undisputed Facts as required by Local Rule 260(a). (ECF No. 85-2.) Plaintiff filed an opposition, but did not include a statement of undisputed facts, or address defendants' statement. After review of the parties' briefing, the undersigned finds the following facts are undisputed for purposes of this motion for summary judgment:

1. At all times relevant herein, plaintiff was a state prisoner in the custody of California Department of Corrections and Rehabilitation ("CDCR") and housed at Mule Creek State Prison

1  ("MCSP").  (ECF No. 10.)

2        2.  At all relevant times, defendants Winkfield, Pendleton, Whipple, and Decker were
3  employed as prison officials at MCSP.  (ECF No. 10.)

4        3.  Between August 28, 2018, and July 2, 2019, plaintiff submitted six non-medical
5  grievances that were accepted for a first- or second-level review regarding events at MCSP.
6  (ECF No. 85-6 at 2-3 ¶¶ 7-9; 4-175 (Ex. 1-7).)

7        4.  During the same time, plaintiff did not submit any non-medical grievances that were
8  accepted for a third-level review.  (ECF No. 85-5 at 3 ¶¶ 7-9; 5-6 (Ex. 1).)

9        5.  Only one of plaintiff's grievances addressed the claims raised in this action:  MCSP-
10  19-01146.  (ECF No. 85-6 at 3 ¶ 9; 105-35 (Ex. 5); ECF No. 85-5 at 3 ¶¶ 8-11; 9-15 (Ex. 2).)

11        6.  In grievance log number MCSP-19-01146, plaintiff alleged that on September 28,
12  2018, he was beaten and pepper sprayed by unidentified correctional officers at MCSP in the
13  "EOP" building.  (ECF No. 85-6 at 108, 110 (Ex. 5).)  Plaintiff sought the following relief:  (a) to
14  have the involved officers fired; (b) monetary compensation, (c) a medical evaluation
15  documenting plaintiff's injuries; and (d) an Internal Affairs investigation.  (ECF No. 85-6 at 108;
16  ECF No. 94 at 57.)

17        7.  A second-level response for MCSP-19-01146 was issued on April 11, 2019.  (ECF No.
18  85-6 at 105-35 (Ex. 5).)  Plaintiff's appeal was granted in part in that the matter was referred to
19  the Office of Internal Affairs for review and possible investigation.  (ECF No. 85-6 at 106; ECF
20  No. 94 at 55.)  Plaintiff was then advised that staff personnel issues are confidential, but that

> [a]llegations of staff misconduct do not limit or restrict the availability of further relief via the inmate appeals process.  If you wish to appeal the decision, you must submit your staff complaint through all levels of appeal review up to, and including, the Secretary's Level of Review.  Once a decision has been rendered at the Third Level, your administrative remedies will be considered exhausted.

25  (ECF No. 85-6 at 107; ECF No. 94 at 56.)

26        8.  The appeal form also advises inmates:  "If you are dissatisfied with the Second Level
27  response, explain reason below; attach supporting documents and submit by mail to Third Level
28  Review.  It must be received within 30 calendar days of receipt of prior response."  (ECF No. 85-

8

6 at 109; ECF No. 94 at 58.)

9. Plaintiff received the second level response. (ECF No. 94 at 33-34 (Pl.'s Dep. at 102-03).)

10. On May 7, 2019, plaintiff completed a Form 22 stating he "would like to know how my 602 is coming along."[4] (ECF No. 94 at 258.) On June 13, 2019, nonparty staff responded that appeal MCSP-B-19-01146 was completed on April 12, 2019, at the second level. (ECF No. 94 at 258.) Plaintiff resubmitted the Form 22, asking whether the appeal was forwarded to the third level, and noting that he wanted the appeal "to go as far as it can to be able to further pursue;" such request is not signed or dated. (ECF No. 94 at 258.) On June 21, 2019, the nonparty supervisor responded: "If you forwarded your appeal to 3rd Level, you will need to contact 3rd Level directly. Institutions do not have access to 3rd Level Appeal tracing to be able to research your request." (ECF No. 94 at 238.)[5]

11. Plaintiff did not timely resubmit MCSP-19-01146 for a third-level review. (ECF No. 85-5 at 3 ¶¶ 7-11; 5-8 (Ex. 1).)

12. On January 11, 2021, the CDCR Office of Appeals received plaintiff's appeal Log No. 2007653. (ECF No. 85-5 at 3 ¶ 11; 11 (Ex. 2.) In such appeal, signed December 28, 2020, plaintiff sought a continuance of his appeal MCSP-19-01146. He wrote that he was in the California Health Care Facility psychiatric inpatient program at the time of third level review, and it was his intention to complete the appeal, referencing a letter plaintiff received from the Office of the Inspector General dated December 8, 2020. (ECF No. 85-5 at 11, 13.) Plaintiff claimed that he wanted the officers fired. (ECF No. 85-5 at 13.)

13. On March 19, 2021, appeal No. 2007653 was rejected by the office of appeals because the appeal was untimely. (ECF No. 85-5 at 10.)

---

[4] "Form 22 allows an inmate to request an interview, item or service from prison staff." Terrell v. Ducart, 2019 WL 2503651, at *1 (N.D. Cal. June 17, 2019), aff'd, 808 F. App'x 520 (9th Cir. 2020); Cal. Code Regs. tit. 15, § 3086(a).

[5] Plaintiff also provided a copy of his note dated July 2, 2019, in which he states he would like to know the current status of his appeal MCSP-B-19-01146, referencing the September 18, 2018 use of force incident, although it is unclear to whom such note was submitted. (ECF No. 94 at 235.)

IV. Discussion

Before filing a § 1983 action in this court, plaintiff must have fully exhausted his appeals by submitting them to the highest level of administrative review and receiving a denial at that level. It is undisputed that plaintiff did not do so. Therefore, defendants have satisfied their initial burden of showing plaintiff failed to exhaust his administrative remedies. See Albino, 747 F.3d at 1171-72. The burden now shifts to plaintiff to show administrative remedies were unavailable to him. Id. at 1172.

A. Legal Standards to Excuse Exhaustion

The Supreme Court has stressed that "all inmates must now exhaust all available remedies," and district courts must apply this statutory requirement. Ross, 136 S. Ct. at 1858. Thus, there is no "special circumstances" exception to the PLRA's rule of exhaustion. Id. That said, the PLRA provides one textual exception by using the term "available," meaning "'capable of use for the accomplishment of a purpose,' and that which 'is accessible or may be obtained.'" Id. (quoting Booth, 532 U.S. at 737-38.)

In Ross, the Supreme Court found "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." 136 S. Ct. at 1858-59. These circumstances are: "(1) when the administrative procedure 'operates as a simple dead end' because officers are 'unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when the administrative scheme is 'so opaque that it becomes, practically speaking, incapable of use' because 'no ordinary prisoner can discern or navigate it'; and (3) when prison administrators 'thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Andres v. Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (quoting Ross, 136 S. Ct. at 1858-59). However, "we expect that these circumstances will not often arise." Ross, 136 S. Ct. at 1859 (citation omitted). The Ninth Circuit characterized the list in Ross as "non-exhaustive." Andres, 867 F.3d at 1078. Various other circumstances may render administrative remedies unavailable, including the failure of prison officials to properly process a prisoner's grievance. Id. at 1079.

////

B. Were Administrative Remedies Unavailable to Plaintiff?

Initially, plaintiff refers to his amended complaint, defendants' answer, and instant motion briefing, and then states he relies on "the 115's and accident reports, also medical [records] to contradict the use of force by defendants." (ECF No. 94.) However, such statements fail to address the issue of administrative exhaustion prior to suit.

Plaintiff reiterates that his second level review was granted in part, and notes that the prisoner handbook confirms prison officials can respond to an inmate appeal in various ways, and that prison staff will do some but not all of what the inmate requested or will address the problem in some alternative way. (ECF No. 94 at 2, citing Cal. Prisoner Handbook at 10.) Plaintiff argues that defendants have not attempted in any way to resolve any part of the matter (aside from the settlement conference). Plaintiff contends that although his appeal was completed at the second level of review, he continued his grievance by submitting the Form 22 dated May 7, 2019. Plaintiff then concludes that he met all available remedies. (ECF No. 94 at 3.)

1. CDCR Form 22 Does Not Exhaust Claims

The Form 22 does not exhaust administrative remedies for purposes of court actions. 15 Cal. Code Regs. § 3086. Rather, as set forth above, California inmates must submit their appeals on the proper grievance form. To the extent plaintiff mistakenly believed his Form-22 exhausted or that he somehow continued the appeal process by filing the Form 22, a reasonable but mistaken belief is not an exception to the exhaustion requirement.[6] The Supreme Court in Ross

---

[6] Plaintiff's deposition testimony does not clarify plaintiff's position. He initially testified that he was not sure if he filed at the third level. (ECF No. 94 at 26 (Pl.'s Dep. at 95).) But in explaining his requests for status in the Form 22, plaintiff stated "then I was questioning them because I may have already sent it to the [third] level, but they never got it." (ECF No. 94 at 27 (Pl.'s Dep. at 96).) Plaintiff testified that when he was back on the main line, he was "pretty sure" he submitted another grievance to the third level. (ECF No. 94 at 34 (Pl.'s Dep. at 103).) Later, he stated "But I'm sure I did file one, and they didn't get it." (ECF No. 94 at 36 (Pl.'s Dep. at 105).) Plaintiff confirmed that he resubmitted the grievance to the third level of review around July 2019, "somewhere in there. Maybe third month. I don't know. I submitted it. I just don't know the dates." (ECF No. 94 at 36-37 (Pl.'s Dep. at 105-06).)

Plaintiff provided no copies of any request for third level review purportedly mailed to the office of appeals, or any other competent evidence confirming that he mailed one. (ECF No. 94, *passim*.)

specifically held that a reasonable misunderstanding of the prison's grievance procedure does not render the process "unavailable" for exhaustion purposes. 136 S. Ct. at 1858. Plaintiff provided no documents or other competent evidence demonstrating that his administrative remedies were unavailable as defined in Ross, or Andres, 867 F.3d at 1078.

### 2. Partial Grant at Second Level Insufficient

Even if the court construed plaintiff's opposition as arguing that he was not required to exhaust his claims to the third level of review because his second level appeal was "granted in part," such argument is not persuasive.

Plaintiff's case is similar to Brown v. Valoff, 422 F.3d 926 (9th Cir. 2005). Like plaintiff, Brown's appeal was partially granted and the matter was turned over for a separate investigation, and Brown did not proceed to the third level of review, later inquiring about the investigation. Brown at 931. However, in Brown, the inmate was not informed that further review was available beyond the second level of review. The lack of such information distinguishes Brown from this case, where plaintiff was instructed the second level response did not provide all the relief that was available through the appeals process, and informed plaintiff that in order to exhaust, he must appeal through the third level of review. In addition, although Brown later inquired about the investigation, in this case plaintiff continued to inquire about the status of his appeal, which supports this court's view that plaintiff was not satisfied with the second level decision. See Harvey v. Jordan, 605 F.3d 681, 685 (9th Cir. 2010) (finding that in order to exhaust administrative remedies, "inmate has no obligation to appeal from grant of relief, or a partial grant that satisfies him.") Finally, in the second response to plaintiff's Form-22, plaintiff was informed that he must seek information concerning his third level appeal from the third level directly.

Although plaintiff admits he received the April 11, 2019 second level appeal response, he does not explain his subsequent requests for status of the appeal. (ECF No. 94 at 1-3.) But plaintiff was clearly informed that he must submit his appeal to the third level of review to exhaust his administrative remedies. This is not an instance where the administrative rules are so confusing that no prisoner could navigate them. Ross, 136 S. Ct. at 1859.

### 3. Untimely Attempt to Resubmit

Plaintiff provided a copy of the appeal Log No. 2007653, but failed to address the appeal in his opposition. (ECF No. 94 at 1-3, 48-53.) Defendants argue that appeal Log No. 2007653 was properly screened out as untimely because it was submitted more than a year and a half after the second level decision issued.

As set forth above, plaintiff's request for third level review was to be received no later than 30 days of receipt of the prior response which issued April 11, 2019. The form states that the decision was mailed or delivered to plaintiff on April 12, 2019. (ECF No. 85-5 at 109.) Plaintiff's December 28, 2020 appeal form does not provide the dates he was allegedly housed in a psychiatric inpatient program at CHCF. Nor does his opposition. But the record reflects that plaintiff was housed at CHCF when he filed appeal no. MCSP-19-01146, when he received his second level response, and when he filed his Form-22 requests in May and sometime in May or June of 2019. Plaintiff failed to address or demonstrate how he was able to file the Form-22 requests from CHCF, yet not submit his request for third level review to the office of appeals.[7]

Submitting an untimely or otherwise procedurally defective administrative appeal does not constitute proper exhaustion. Woodford, 548 U.S. at 90. The undersigned finds that plaintiff failed to rebut defendants' evidence that his attempt to submit the request for third level review over a year and a half after the deadline for filing was properly rejected as untimely, and cannot excuse him from the exhaustion requirement.

### 4. Conclusion

In conclusion, plaintiff fails to demonstrate a material issue of fact regarding an excuse to the exhaustion requirement. The undisputed material facts show plaintiff failed to timely exhaust his administrative remedies through the highest level of review before filing this suit as required by 42 U.S.C. § 1997e(a). Accordingly, defendants' motion for summary judgment should be granted.

////

---

[7] Plaintiff also testified that he left CHCF and arrived at CMC in July of 2019. (Pl.'s Dep. at 103.)

IT IS HEREBY RECOMMENDED that defendants' motion for summary judgment (ECF No. 85) be granted.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, either party may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in waiver of the right to appeal the district court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: September 16, 2021

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/hawk1228.msj.fte